# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MAHMOUD M. MAHMOUD,** | )    NO. CV 15-7763-GW(KS) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **REPORT AND RECOMMENDATION OF** |
| | )    **UNITED STATES MAGISTRATE JUDGE** |
| **CORINNE LUNA, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

    This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## INTRODUCTION

    On October 2, 2015, Mahmoud Mohamed Mahmoud ("Plaintiff"), a California resident who is preceding *pro se*, filed a complaint alleging wrongdoing by numerous federal officers and private actors (the "Complaint"). (Dkt. No. 1). The Court dismissed the Complaint with leave to amend. (Dkt. No. 6.) On October 29, 2015, Plaintiff filed the First

1

Amended Complaint ("FAC").  (Dkt. No. 7.)  On November 9, 2015, the Court dismissed the FAC with leave to amend.  (Dkt. No. 8.)  On December 7, 2015, Plaintiff filed his Second Amended Complaint ("SAC") (Dkt. No. 9) and, on December 9, 2015, requested additional time to file exhibits (Dkt. No. 10).  The Court granted Plaintiff's request (Dkt. No. 11), and, on December 28, 2015, Plaintiff filed 356 pages of exhibits, including, *inter alia*, multiple photographs of buildings and cars, Plaintiff's retainer agreements with immigration lawyers, Los Angeles County Superior Court records, medical records, letters and complaints filed with various state and federal agencies, organizations, and government officials, and documents and correspondence dating back to 1992 concerning Plaintiff's immigration and citizenship status.  Based upon the Court's review of the SAC and accompanying exhibits, it is recommended that this action be dismissed with prejudice for failure to state a claim.

## STANDARD OF REVIEW

In civil actions where the plaintiff is proceeding *in forma pauperis* ("IFP"), Congress requires district courts to dismiss the complaint "at any time" if the court determines that the complaint, or any portion thereof:  (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2); *see also Karas v. Access Hollywood*, No. C 12-02310-CRB, 2012 WL 3116230 at *2 (N.D. Cal. July 31, 2012) (granting IFP request and *sua sponte* dismissing complaint with leave to amend for failure to state a claim).

However, even when the plaintiff is not proceeding IFP, under Federal Rule of Civil Procedure 12(b)(6) a trial court may dismiss a claim *sua sponte* and without notice "where the claimant cannot possibly win relief."  *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (same); *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per*

*curiam*) (adopting Ninth Circuit's position in *Omar* and noting that in such circumstances a *sua sponte* dismissal "is practical and fully consistent with plaintiffs' rights and the efficient use of judicial resources").  The court's authority in this regard includes *sua sponte* dismissal of claims against defendants who have not been served and defendants who have not yet answered or appeared.  *See Abagnin v. AMVAC Chemical Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008); *see also Reunion, Inc. v. F.A.A.*, 719 F. Supp. 2d 700, 701 n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and filed a motion to dismiss is no bar to the court's consideration of dismissal of the claims against them for failure to state a claim upon which relief can be granted, given that a court may dismiss any complaint *sua sponte* for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).").

When a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt.  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).  In giving liberal interpretation to a *pro se* complaint, however, the court may not supply essential elements of a claim that were not initially pled. *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011).  A court must give a *pro se* litigant leave to amend the complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Akhtar*, 698 F.3d at 1212 (internal quotation marks omitted); *Lira v. Herrera*, 427 F.3d 1164, 1176 (9th Cir. 2005). However, if amendment of the pleading would be futile, leave to amend may be denied.  *See Ventress v. Japan Airlines*, 603 F.3d 676, 680 (9th Cir. 2010).  For the reasons discussed below, amendment of the pleading would be futile in this case, and it is therefore recommended that the Court dismiss this action with prejudice for failure to state a cognizable claim for relief.

\\

\\

\\

3

**ALLEGATIONS**

According to the section of the SAC entitled "Parties," Plaintiff sues the following Defendants:   (1) Corinne Luna, Field Office Director at the Department of Homeland Security ("DHS"), District 23, in her individual capacity; (2) Laura Patching, Chief of the Office of Citizenship for the DHS, District 23, in her individual capacity; (3) James Mccament, Chief of United States Citizenship & Immigration Services ("USCIS"), in his individual capacity; (4) Susan M. Curda, District Director of the DHS, District 23, in her individual capacity; (5) Linda Johnson, supervisor with the DHS, District 23, in her individual capacity; (6) Mr. Danielle, supervisor with the DHS, District 23, in his individual capacity; (7) Claudia Escoto, employee of the DHS, District 23, in her individual capacity; (8) Esther Castfieda, employee of the DHS, District 23, in her individual capacity; and (9) Adam Pearl, attorney, in his individual capacity.   (SAC at 2-3.)   The Second Amended Complaint also names several defendants that Plaintiff did not name in either the Complaint or the FAC, including:   Jane E. Arellano, District Director of the DHS, District 23, sued in her individual capacity; Robert Cowan, another DHS official, sued in his individual capacity; A. Bond, an employee of the DHS, District 23, sued in his individual capacity; Officer Speec with the USCIS, who is sued in his individual capacity; and "unknown officers" also sued in their individual capacities.   (*Id.*)   Plaintiff also refers to other individuals and entities as "defendants" throughout the SAC.

Plaintiff's rambling 84-page Second Amended Complaint is a veritable laundry list of injustices that Plaintiff believes he has suffered over the past 25 years at the hands of federal, state, and private actors.   These allegations, which are vague, confusing, redundant, and poorly organized, include several claims of attempted murder arising out of a series of car accidents with private citizens (*see, e.g.*, SAC at 10-11 (alleging that his 2008 car accident was an act of attempted murder by Amira Shalaby), 15-16 (alleging that a 2010 car accident with unidentified person was an act of attempted murder by Temple City officials and police

captains), 21-23, 65 (alleging 2011 car accident was an act of attempted murder by Adam Bar Wick and Adam Bar Wick Electricity); *see also id.* at 33 (allegations regarding a 2013 car accident), 78 (alleging Plaintiff suffered "more than four accidents 'attempt to murder' first and second degree, in the years 2008, 2009, 2010, 2011, and 2013, last incident was at City of West Covina, April 14th & 15th, 2015"), 82) and one claim of attempted murder based on a bout of food poisoning that Plaintiff suffered while living at a Glendale YMCA (SAC at 12-14 (alleging that Glendale city officials and police captains attempted to murder Plaintiff by food poisoning him)).  Plaintiff also alleges that a man – "Mr. Jerome" – dropped two microwaves on Plaintiff's head while Plaintiff was working as a security guard in September 2008.  (SAC at 12.)

In connection with the DHS Defendants, Plaintiff alleges that his immigration paperwork, including his applications for a green card and a work permit, were not properly processed by DHS employees in California and New Jersey, and DHS staff were not responsive to his questions.  (*See* SAC at 4-10.)  In particular, Plaintiff claims that, in August 2002, he filed an application for an Adjustment of Status and Defendant Bond asked Plaintiff to check on his application for an Adjustment of Status in one to three months, but when Plaintiff returned one month later to do so, Defendant Bond and her supervisor gave him "a very hard time and advised [him] to go home before they call the security . . . claiming that they are going to terminate [his] immigration file."  (*Id.* at 8-9.)  Defendant Bond later told Plaintiff he had to file a motion to reopen and reconsider his immigration case, which Plaintiff did, but in March 2003 he received a "notice of termination," which asked him to leave the United States.  (*Id.*)  Plaintiff further alleges that the DHS "passed [his] name" to other agencies and entities, including the Social Security Administration, the Department of Social Service, the Department of Health Care, Plaintiff's health care insurance provider, and various doctors and nurses, for the purpose of causing Plaintiff harm.  (*See id.* at 38.)

Plaintiff alleges wrongdoing by two immigration attorneys.  He claims that Defendant Pearl made fun of Plaintiff and tried to push an immigration judge into denying Plaintiff's application for asylum.  (*See* SAC at 35-36.)  He claims that Dante Valera knows that the DHS committed fraud but withdrew from Plaintiff's case as a favor to the DHS.  (*See id.* at 28).

Plaintiff devotes a significant portion of the SAC to presenting allegations against the police departments for the cities of Glendale, Temple City, Los Angeles, Irwindale, Baldwin Park, Pasadena, and West Covina.  (*See, e.g.,* SAC at 12-14 (allegations against Glendale police), 31 (allegations against Irwindale police), 37 (alleging harassing encounters with the Los Angeles, Baldwin Park, West Covina, Irwindale, Pasadena, Glendale, and Temple City police), 44-45 (allegations against Baldwin Park police), 46-47 (allegations against Pasadena police), 49-50 (allegations of false arrest against Los Angeles police), 56-64, 66-74, 78-79 (allegations against West Covina police).)  Plaintiff complains that these police departments are collaborating with the DHS and/or other police departments who are working with the DHS to discriminate against Plaintiff and have harassed Plaintiff by, *inter alia*, tailing him, issuing speeding tickets, having him falsely arrested, and, in some cases, attempting to murder him by collaborating with the private individuals with whom he got into car accidents.  (*See id.*; *see also id.* at 37, 47 (alleging collaboration with the DHS).)

Plaintiff alleges that the Social Security Administration, in collaboration with the DHS, delayed processing of Plaintiff's 2013 application for SSI, which caused Plaintiff serious financial hardship until some of his SSI benefits were received on October 22, 2015. (SAC at 32-33, 38.)

Plaintiff complains of two instances of medical malpractice.  First, he complains that he received inadequate care from the Kaiser Permanente emergency room in connection with his complaints of severe shoulder and back pain.  (SAC at 39-42.)  Second, he complains

that, because he did not have one of Southern California Heart Center's preferred insurance plans, he received inadequate follow up care in connection with his angiogram procedure. (*Id.* at 42-43, 80.)

Finally, Plaintiff alleges wrongdoing against a series of private companies, including Google and YouTube, which, Plaintiff claims have not reimbursed Plaintiff for their use of his company website and "50 video."  (SAC at 76.)  Plaintiff also claims that Chase Bank did not properly deposit a check that Plaintiff brought to the Baldwin Park branch and then assessed Plaintiff a $101 collections fee.  (*See id.* at 33-35.)

It is difficult to decipher from Plaintiff's list of grievances the precise number, nature, and operative facts of his causes of action and the legal remedies he seeks.  However, Plaintiff appears to seek a jury trial, injunctive relief, and "unlimited compensatory damages" according to proof.  (*See* SAC at 27, 51, 74-75, 84.)

## DISCUSSION

Pleadings by *pro se* litigants should be liberally construed, especially where civil rights are concerned.  *Akhtar*, 698 F.3d at 1212.  Even so, *pro se* pleadings must comply with the pleading requirements under the Federal Rules of Civil Procedure.  *Carter v. Comm'r*, 784 F.2d 1006, 1008 (9th Cir. 1986).  Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  Ultimately, a complaint violates Rule 8 if a defendant would

have difficulty understanding and responding to the complaint. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011).

Plaintiff's Second Amended Complaint must be dismissed for failure to comply with Rule 8.   In dismissing the original Complaint, the Court explained to Plaintiff that that the Complaint was a "voluminous, largely incoherent document," "devoid of facts . . . connecting any individual defendant to specific conduct," and did not satisfy the Rule 8 pleading standards for a "short plain statement of the claim showing that the pleader is entitled to relief."   In dismissing the First Amended Complaint with leave to amend, the Court provided instructions intended to assist Plaintiff in filing a second amended complaint. Specifically, the Court instructed Plaintiff to "make clear the nature and grounds for each claim, specifically identify the Defendants he maintains is liable for that claim, [and] clearly and concisely explain the basis for their liability."   The Court also "strongly encouraged" Plaintiff to use the standard civil rights complaint form when filing any amended complaint. Finally, the Court cautioned Plaintiff that failure to correct the deficiencies of the FAC would result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).

Nevertheless, the Second Amended Complaint contains the same defects as Plaintiff's earlier pleadings and includes new allegations and defendants that further confuse the reader. In particular, Plaintiff again omits a "short and plain statement of the claim showing that the pleader is entitled to relief," as Rule 8 requires, and fails to link specific conduct and defendants to clearly articulated legal wrongs.   Instead, the Second Amended Complaint presents a series of rambling allegations mixed with irrelevant facts, conclusory statements, and conjecture.   It is, as a result, impossible to determine from the SAC and accompanying exhibits which statements Plaintiff intends as claims, which he intends as supporting facts, which individuals he is suing, and what redress he seeks from whom.   For example, on page 82 of the 84-page SAC, Plaintiff writes that, based on his allegations in all of the preceding

pages – "from page 1 to page 82" – "defendant caused and/or permitted the violation of plaintiff's fourth and fourteenth amendments rights to be free from unreasonable searches and seizures."  However, those 82 pages effectively constitute the entirety of the SAC and therefore contain allegations against Google, YouTube, Chase Bank, Kaiser Permanente, doctors with Southern California Heart Center, plaintiff's immigration attorney, and a host of other people and entities whom Plaintiff has not alleged were involved in any search or seizure of his person or property.  Plaintiff also repeatedly fails to specify the federal nature and legal basis for many of his claims, instead referring broadly to violations of his "civil rights," and at one point purporting to assert a Second Amendment violation based on the DHS Defendants' delays in the processing of Plaintiff's green card and asylum applications.  Because Plaintiff's allegations are unclear, it would be nearly impossible to frame a responsive pleading.  *See McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir.1996) ("prolix, confusing" complaints that do not clearly state "who is being sued for what" unfairly burden the court and opposing counsel).

Where the violation of Rule 8 is egregious, as in this case, dismissal is appropriate.  *See McHenry*, 84 F.3d at 1177-80 (affirming dismissal of third amended complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant" and violative of Rule 8"); *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal of second amended complaint "as verbose, confusing and conclusory as the initial complaint").  Here, the Court dismissed Plaintiff's original Complaint with leave to amend after explicitly identifying and explaining a number of defects in the pleading.  The Court then dismissed Plaintiff's First Amended Complaint with leave to amend and clear instructions intended to assist Plaintiff in filing an amended complaint.  Nevertheless, Plaintiff has filed a Second Amended Complaint that is no less confusing and incoherent than the original complaint.  Accordingly, granting Plaintiff a third opportunity to amend the complaint would be futile, and the Court recommends dismissing the Second Amended Complaint without leave to amend.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the District Judge issue an Order:  (1) accepting the Report and Recommendation; and (2) directing that Judgment be entered dismissing this action with prejudice for failure to state a claim.

DATED: January 5, 2016

*Karen L. Stevenson*
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.